IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROGER GARCIA,

        Plaintiff,                    No. 2:10-cv-02693 KJM KJN P

    VS.

A. PALOMINO, et al.,

        Defendants.            FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

        Plaintiff is a state prisoner, in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), incarcerated at Mule Creek State Prison ("MCSP"). Plaintiff proceeds without counsel, and in forma pauperis, in this action filed pursuant to 42 U.S.C. § 1983, wherein plaintiff alleges deliberate indifference to his serious medical needs. On December 10, 2010, the court found that plaintiff's original complaint stated potentially cognizable claims against defendants Palomino, Lovett and Akintola. Plaintiff thereafter filed an amended complaint, refining his claims against these defendants, which now serves as the operative complaint. (Dkt. No. 11.)

        Defendants move to dismiss plaintiff's amended complaint on the grounds that: (1) plaintiff failed to exhaust his administrative remedies as to defendants Palomino and

1

Akintola, and as to some of his allegations against defendant Lovett; and (2) the amended complaint fails to state a cognizable claim against any defendant. (Dkt. No. 18.) Plaintiff timely filed an opposition (Dkt. No. 19), and defendants filed a reply. (Dkt. No. 20.) For the reasons that follow, it is recommended that defendants' motion to dismiss be denied.

II. Plaintiff's Factual Allegations

Plaintiff alleges that he broke his finger (the fourth finger on his right hand), while playing basketball on September 2, 2007, causing "extreme pain." (Dkt. No. 11 at 2.) Plaintiff asserts that defendant Palomino, a nurse assigned to the MCSP A-Yard Medical Clinic, refused to address plaintiff's injury as an emergency, sending him away on September 2, 4, and 5, 2007. (September 3, 2007 was a holiday, Labor Day.) Plaintiff alleges that Palomino waited until September 6, 2007, pursuant to a ducat plaintiff received the evening before, to first examine plaintiff's finger. Pursuant to her examination, Palomino contacted Dr. Hashimoto, who ordered x-rays, which were taken on September 11, 2007. Findings included a break and "significant degenerative changes." The radiologist, Dr. Pepper, contacted Dr. Galloway, who referred plaintiff, on an urgent basis, to orthopedic surgeon Dr. Lovett.

Plaintiff alleges that he was initially seen by defendant Dr. Lovett on September 13, 2007, who obtained urgent authorization to perform surgery. Dr. Lovett performed surgery on plaintiff's finger on September 17, 2007, described as an "open reduction and internal fixation with volar plate resconstructions and right ring dorsal dislocation." (Id. at 4.)

Plaintiff alleges that, on October 1, 2007, he was seen by a MCSP Physician Assistant ("PA"), defendant Akintola, who noted a foul odor and puss emanating from plaintiff's finger. These symptoms were again noted on October 3, 2007, by a nurse who changed the dressing. Plaintiff asserts that, on October 11, 2007, Akintola again saw plaintiff, but stated that he "could not give an adequate diagnosis because plaintiff's MCSP medical chart was missing." (Id. at 5.) Nevertheless, Akintola prescribed antibiotics and motrin for plaintiff.

On November 8, 2007, plaintiff had his first post-surgical follow-up appointment

with Dr. Lovett, who reportedly noted that plaintiff's symptoms may be caused by arthritis.

Plaintiff alleges that, on November 19, 2007, "a doctor" found that plaintiff had a staph infection, and ordered x-rays. The x-rays, taken and reviewed by radiologist Dr. Pepper, indicated the presence of a dislocated "small residual metallic pin . . . possibly part of a screw or fixation device." (Id. at 6.) Dr. Pepper recommended that an MRI be taken of plaintiff's right hand.

On November 21, 2007, Dr. Hashimoto lanced plaintiff's finger, shot lidocaine into plaintiff's finger, and ordered an orthopedic follow-up. On November 26, 2007, plaintiff was seen by Dr. Tseng, who stated that his follow-up was limited because he had no x-ray results.

On December 21, 2007, Dr. Lovett stated, in an Orthopedic Consultation report, that, "I do not feel [plaintiff] needs physical therapy and does not require any further follow up." (Id.)

Plaintiff alleges that he has been in significant pain since his September 2, 2007 injury, and that he has "permanently lost mobility in my finger." (Id.)

Pursuant to this action, plaintiff seeks general, exemplary and punitive damages, and "such other and further relief the court may deem just and proper." (Id. at 7.)

III. Exhaustion of Administrative Remedies

Defendants move to dismiss this action against defendants Palomino and Akintola, and to narrow the scope of plaintiff's claims against defendant Lovett, based on plaintiff's alleged failure to exhaust administrative remedies. Defendants note that plaintiff brought two pertinent administrative grievances, but exhausted only one, which defendants contend is pertinent only to challenged conduct that occurred within the five months prior to the September 2008 filing of that grievance. Thus, argue defendants, this grievance may not properly be construed to challenge the 2007 conduct of defendants Palomino and Akintola, or, for that matter, the conduct of defendant Lovett prior to April 2008.

A. <u>Legal Standards</u>

The Prison Litigation Reform Act ("PLRA") provides that, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Pursuant to this rule, prisoners must exhaust their administrative remedies regardless of the relief they seek, i.e., whether injunctive relief or money damages, even though the latter is unavailable pursuant to the administrative grievance process.  <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001).  Exhaustion also requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules, including deadlines.  <u>Woodford v. Ngo</u>, 548 U.S. 81 (2006).

The PLRA requires that administrative remedies be exhausted prior to filing suit. <u>McKinney v. Carey</u>, 311 F.3d 1198 (9th Cir. 2002).  The exhaustion requirement is not jurisdictional, but an affirmative defense that may be raised by a defendant in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b).  <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007) ("inmates are not required to specially plead or demonstrate exhaustion in their complaints"); <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1117-19 (9th Cir. 2003) (failure to exhaust is an affirmative defense).  Defendants bear the burden of raising and proving the absence of exhaustion, and their failure to do so waives the defense.  <u>Id.</u> at 1119.

"In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." <u>Wyatt</u>, 315 F.3d at 1119. "I[f] the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust-a procedure closely analogous to summary judgment-then the court must assure that [the prisoner] has fair notice of his opportunity to develop a record." <u>Id.</u> at 1120 n.14. When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." <u>Id.</u> at 1120; see also <u>Lira v. Herrera</u>, 427 F.3d 1164, 1170 (9th Cir. 2005)

("mixed" complaints may proceed on exhausted claims). Thus, "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad." Jones, 549 U.S. at 221.

"The level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures." Jones, 549 U.S. at 218. In California, prisoners are required to lodge their administrative complaint on a CDC Form 602, which requires only that the prisoner "describe the problem and action requested." Cal. Code Regs. tit. 15, § 3084.2(a). In Griffin v. Arpaio, 557 F.3d 1117 (9th Cir. 2009), the Ninth Circuit Court of Appeals adopted the standard enunciated by the Seventh Circuit, which provides that "when a prison's grievance procedures are silent or incomplete as to factual specificity, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" Griffin, 557 F.3d at 1120 (reviewing Arizona procedures), quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002). Thus, in California, "[a] grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Griffin, 557 F.3d at 1120; accord, Morton v. Hall, 599 F.3d 942, 946 (9th Cir. 2010).

Further, and significantly, absent an express requirement to the contrary (which does not exist in the California prison grievance process), "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances." Jones, 549 U.S. at 219. It is nonetheless appropriate to require that a prisoner demonstrate, through the administrative grievance process and consistent with the PLRA, that he has standing to pursue his claims against a particular defendant. "[A]t an irreducible minimum, Art[icle] III [of the United States Constitution] requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal

5

1 conduct of the defendant.' " <u>Valley Forge Christian College v. Americans United for Separation</u>
2 <u>of Church & State, Inc.</u>, 454 U.S. 464, 472 (1982) (quoting <u>Gladstone Realtors v. Village of</u>
3 <u>Bellwood</u>, 441 U.S. 91, 99 (1979).

   B. <u>Discussion</u>

In his first administrative grievance, submitted April 6, 2008, plaintiff recounted in detail the delays he initially experienced in obtaining medical care for his finger, and the alleged inadequacy of the care he ultimately received. (Dkt. No. 18-1 at 15-18.) Plaintiff requested "that my fingers[1] be fixed so that they are functionable (sic) once again." (<u>Id.</u> at 16.) The Informal Level Response, signed by LVN Moore, provided in full (<u>id.</u>):

> (1) According to our records it appears that all has been done and continues to be followed up R/T your (R) ring finger. (2) Partially Granted. We will have the M.D. once again look at your finger issues by scheduling a follow/up appt. R/T the function of your fingers.

Plaintiff did not further pursue this grievance, which was accorded a "tracking number," but not an administrative "log number." (<u>Id.</u> at 15 (Tracking No. 16-2008-03677).) None of the defendants are named in this grievance, although clear reference is made to their challenged conduct.

In his second, exhausted, administrative grievance (Log No. MCSP-16-08-15067), submitted five months later, on September 4, 2008, plaintiff described his problem as follows (Dkt. No. 18-1 at 12 (sic)):

> I have been patiently waiting for medical treatment for my fingers, which, by now have obviously become handicapped and permanently damaged due to this prison's acts of deliberate indifference to an medical condition. This continued lack of timely medical assistance and failed and improper diagnosis, has caused me to effectively become handicapped, and yet still, I was told by LVN Moore that there would be an follow up appointment due to the complaint of pain and stiffness, and the promise was almost 5

---

[1] Plaintiff noted that another of his fingers had previously been operated on, and the result also allegedly unsuccessful. Plaintiff's medical treatment for his "other" finger is not before the court in this action.

6

> months ago. This extreme discrimination, deriliction of duty, medical malpractice and inhumane treatment all constituting 8th Amendment violations, is unwarranted and thereby deemed misconduct. (See attached exhibit [not included in the record before the court].)[2]

Plaintiff described the following "Action Requested" (id. (sic)):

> At this juncture, I am well within my right to litigation, therefore, it is my intention to bring an lawsuit against all medical CDCR employees, individuals involved with my case, and to ensure the proper censure and/or revoking of all licensing of these individuals in an medical malpractice suit, unless, there is immediate and competent, medical treatment that restores the mobility and flexibility of my hand and am no longer handicapped (as this prison has caused) other than that, I will seek damages.

The Informal Level Response, signed September 18, 2008, stated, "You are scheduled to be seen next week to discuss your concerns." (Id.) Plaintiff responded, on September 23, 2008, as follows (id. (sic)):

> To cause me to repeat the exact same process, with the exact same individuals and expect a different result, is clinically defined as schizophrenia and obsessive compulsive disorder. At this juncture you are further denying me the appropriate medical assistance to relieve the unnecessary pain and suffering I am experiencing because of your deliberate indifference to an medical condition and an act of cruel and unusual punishment per the 8th Amendment and P.C. 147 inhumane treatment.

The First Level Response was provided October 8, 2008, by Dr. Naseer, pursuant to a "face to face" interview with plaintiff. (Dkt. No. 18-1 at 13.) The written response provided in full (id.):

> You have been referred to orthopedic doctor Dr. Lovett for evaluation of your (R) hand ringer (sic) finger to see if anything else could be done to improve range of motion. According to your medical records, you have been appropriately treated.

Plaintiff responded on November 4, 2008, noting that he did not receive the First Level Response until November 3, and stating as follows (id. (sic)):

---

[2] If the "attached exhibit" was the same as the "additional sheet" attached to plaintiff's prior grievance, it set forth the details of plaintiff's complaints commencing in September 2007.

7

>I have waited patiently for medical to at least keep their word concerning this which was caused by medical's negligence in the first place. And once again it's been a month again, and still, you people have denied me an means to an end. This entire ordeal is an malpractice issue and a blatant act of deliberate indifference to an medical condition and act of inhumane treatment of an prisoner per Penal Code 147.

The Second Level Response "partially granted" plaintiff's grievance on December 23, 2008, on the following grounds (id. at 10-11):

>Mr. Garcia, you have been receiving continual treatment regarding your hand by Mule Creek State Prison (MCSP) health care staff and Dr. Lovett, an outside Orthopedic Specialist for over the past two years. You had surgery on your hand in September 2007 and several follow-up appointments with Dr. Lovett.
>
>Dr. Lovett's most recent examination of you on February 14, 2008, states:
>
>>"Patient is making definite progress. These are no signs of infection. He is out shooting hoops, is working on getting his flexion down, but at this time I would expect that he will never regain full range of motion, although he is doing much better through the MP joint."
>
>September 23, 2008, you were referred to be again [seen] by Dr. Lovett because of your recent complaints of pain and stiffness. Dr. Lovett saw you on December 4, 2008. As of the writing of this appeal the results of the consultation are not yet available.
>
>Your appeal is being placed into a file in the Health Care Appeals Office to follow-up with to ensure you have a follow-up appointment with the facility clinic to discuss the consultation findings from Dr. Lovett.
>
>. . . . The review of your health care chart reveals that your care at MCSP has been appropriate and timely. This institution's health care service endeavors to provide appropriate medical care and treatment commensurate with the community health care standards . . . .

On January 3, 2009, plaintiff requested a Director's Level Review, on the following grounds (id. at 13 (sic)):

>My comments are the exact same as above, adding all this paperwork does nothing but establishes guilt and culpability on CDC's part. According to your own documents, you people have

>effectively handicapped me by destroying my fingers it's not right and something has to be done about it and litigation seems to be the only venue you have left me by denying the appropriate assistance when it was necessary.

The Director's Level Response was issued on January 21, 2010 (more than one year after plaintiff submitted his request for Director's Level Review), and provided in pertinent part (id. at 8-9):

>At the Director's Level Review (DLR), submitted on January 3, 2009, you stated you had two surgeries on your hand and both were unsuccessful; your hand became so infected that one of the pins inserted during surgery fell out; your right hand had been handicapped; and you felt litigation was the only venue left for you to pursue since you had not received the treatment necessary for your hand.
>
>. . . Your contention that you have not received adequate medical care is refuted by professional health care staff familiar with your medical history, as well as a review of your medical records.
>
>At the DLR your appeal file and documents obtained were reviewed by licensed clinical staff who determined your care related to your appeal issues was adequate as you received appropriate care and treatment for your hand.
>
>. . . After review, there is no compelling evidence that warrants intervention at the DLR as your medical condition has been evaluated by licensed clinical staff and you are receiving treatment deemed medically necessary.[3]

Defendants contend that this exhausted grievance should be construed as a complaint only that LVN Moore failed to keep the promise she made five months before, when she responded to plaintiff's initial grievance that she would make a "follow up appointment." This construction is untenable. It is clear, pursuant to this grievance, that plaintiff was complaining about all of the medical care he received for his finger, commencing on September 2, 2007, and continuing through his request for Director's Level Review. This grievance clearly "alerted" MCSP officials "to the nature of the wrong for which redress [was] sought," Griffin,

---

[3] The other portions of the Director's Level Response was clearly "boilerplate."

1    557 F.3d at 1120, specifically, the alleged failure of MCSP medical staff to timely and
2    adequately treat plaintiff's injury when it occurred, and thereafter.  Plaintiff was compelled to
3    seek, from his only available medical providers, additional treatment that might render his finger
4    more functional; plaintiff had no other option.  Therefore, the court finds that plaintiff's pursuit
5    of these matters through the exhausted grievance process served both to "alert the prison to [the]
6    problem," which commenced on September 2, 2007, and sought to "facilitate its resolution," by
7    obtaining further, adequate, and remedial medical care.  Id., 557 F.3d at 1120.
8             In addition, although none of the defendants were named in plaintiff's exhausted
9    grievance, the grievance alleges sufficient facts to support plaintiff's civil rights claims in the
10   present action against defendants Palomino, Lovett and Akintola.  See Jones, 549 U.S. at 219
11   (exhaustion not per se inadequate because a defendant was not identified in the underlying
12   administrative grievance).  The scope of plaintiff's grievance, commencing with the September
13   2, 2007 break of this finger, encompasses all of the alleged misconduct of each of these
14   defendants, both substantively and temporally.[4]
15            Accordingly, this court recommends the denial of defendants' motion to dismiss
16   plaintiff's allegations against defendants Palomino and Akintola, and to narrow the scope of
17   plaintiff's allegations against defendant Lovett, based on plaintiff's alleged failure to
18   administratively exhaust his claims against these defendants.
19   ////
20   ////
21   ////

---

[4] As asserted by plaintiff in the course of administratively exhausting his grievance, noted supra, his medical problems were allegedly "caused by medical's negligence in the first place;" who "effectively handicap[p]ed me by destroying my fingers;" that plaintiff encountered a "continued lack of timely medical assistance and failed and improper diagnosis;" that plaintiff continues to be denied "appropriate medical assistance to relieve the unnecessary pain and suffering;" and that plaintiff seeks "immediate and competent, medical treatment that restores the mobility and flexibility of my hand and [renders me] no longer handicapped (as this prison has caused)."

IV. Alleged Failure to State a Claim

Defendants move, alternatively, to dismiss this action against each defendant for failure to state a claim.

    A. Legal Standards

        1. Deliberate Indifference to Serious Medical Needs

Inadequate medical care does not constitute cruel and unusual punishment cognizable under § 1983, unless the mistreatment rose to the level of "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." Id. at 104. Deliberate indifference may include an inadequate medical response, "intentionally denying or delaying access to medical care, or intentionally interfering with the treatment once prescribed." Id. at 104–05.

"In the Ninth Circuit, the test for deliberate indifference consists of two parts." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citations omitted). These parts are:

> First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong -- defendant's response to the need was deliberately indifferent -- is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.

Id. (citations and internal quotation marks omitted).

To establish deliberate indifference, a plaintiff must show that defendants knew of, and disregarded, an excessive risk to his health or safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994). A prison official must "both be aware of facts from which the inference could be

1  drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.
2  The nature of a defendant's responses must be such that the defendant purposefully ignores or
3  fails to respond to a prisoner's pain or possible medical need in order for deliberate indifference
4  to be established. McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled in part
5  on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997). Deliberate
6  indifference may occur when prison officials deny, delay, or intentionally interfere with medical
7  treatment, or may be demonstrated by the way in which prison officials provide medical care.
8  Id. at 1059–60.

9        A showing of merely inadvertent or even negligent medical care is not enough to
10 establish a constitutional violation. Estelle, 429 U.S. at 105–06; Frost v. Agnos, 152 F.3d 1124,
11 1130 (9th Cir. 1998). A mere difference of opinion concerning the appropriate treatment cannot
12 be the basis for an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330, 332 (9th
13 Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Rather, an inmate must
14 allege facts sufficient to indicate a culpable state of mind on the part of prison officials. Wilson
15 v. Seiter, 501 U.S. 294, 297–99 (1991). Accordingly, a difference of opinion about the proper
16 course of treatment is not deliberate indifference, nor does a dispute between a prisoner and
17 prison officials over the necessity for or extent of medical treatment amount to a constitutional
18 violation. See e.g. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891
19 F.2d 240, 242 (9th Cir. 1989).

20       2. Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)
21       The Federal Rules of Civil Procedure authorize motions to dismiss for "failure to
22 state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a
23 motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as
24 true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and
25 construe the pleading in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S.
26 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999). In order to

survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007).  However, "[s]pecific facts are not necessary; the statement [of facts] need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson, 551 U.S. 89 (internal citations omitted).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

B. Discussion

1. Nurse Palomino

Plaintiff alleges that Nurse Palomino was deliberately indifferent to plaintiff's serious medical needs when: (1) on September 2, 2007, Palomino allegedly refused to examine plaintiff on an urgent basis, instead ordering him to leave under threat of intervention by a security guard; (2) on September 4, 2007, Palomino allegedly again refused to examine plaintiff but required that he put his medical request "into the box," to be read the next day; (3) on September 5, 2007, Palomino allegedly again refused to examine plaintiff, instead summoning the clinic guard to escort plaintiff away from the clinic; and, thus (4) waited until September 6, 2007, pursuant to a ducat, to first examine plaintiff's finger.

Defendants assert that these alleged facts may demonstrate "no more than negligence." (Motion (Dkt. No. 18 at 14); Reply (Dkt. No. 20 at 4).) The court finds, however,

that plaintiff's allegations are sufficient to state a claim of deliberate indifference against defendant Palomino. Viewed in the light most favorable to plaintiff, his allegations support the reasonable inference that Palomino was aware, commencing with plaintiff's first visit to the clinic, that plaintiff had seriously injured his finger, that it required immediate treatment, and that plaintiff was in significant pain; and that Palomino nonetheless intentionally withheld and/or delayed treatment.

Therefore, this court recommends that defendants' motion to dismiss defendant Palomino from this action be denied.

2. Dr. Lovett

Plaintiff alleges that Dr. Lovett was deliberately indifferent to plaintiff's serious medical needs when: (1) on September 17, 2007, Dr. Lovett's surgery on plaintiff's finger was allegedly unsuccessful and caused additional problems of mobility and infection (plaintiff asserts that the surgical pin was "mistakenly left," and, inferentially, that it may have caused the subsequent infection in plaintiff's finger and/or a staph infection); (2) that Dr. Lovett allegedly failed to provide adequate follow-up treatment, postponing until November 8, 2007, plaintiff's first follow-up appointment, and then failing on that date to provide treatment although plaintiff's finger was "swollen, stiff, [and plaintiff] could not bend the joint;" and (3) on December 21, 2007, that Dr. Lovett allegedly and improperly again concluded that plaintiff did not require physical therapy or any other type of follow-up treatment. (Dkt. No. 11 at 5.)

Defendants assert that these alleged facts may demonstrate no more than "mere negligence" (with respect to the surgical pin), or "a difference of medical opinion" (with respect to opining that plaintiff did not require further follow-up care.) (Motion (Dkt. No. 18 at 15); Reply (Dkt. No. 20 at 6).) The court finds, however, that plaintiff's alleged facts may reasonably be construed to state a claim of deliberate indifference. While Dr. Lovett apparently acted quickly and prudently to perform surgery on plaintiff's finger, the quality of that surgery appears to remain an open question. Moreover, Dr. Lovett did not conduct a post-surgical follow-up

1 examination for nearly two months.  In the interim, plaintiff experienced apparently significant
2 post-surgical complications, including infection, pain and decreased mobility.  Shortly after
3 plaintiff's initial follow-up appointment with Dr. Lovett, plaintiff obtained radiological findings
4 that identified a dislocated surgical pin.  Notwithstanding this finding, Dr. Lovett again opined
5 that plaintiff required no follow-up care.  Viewed in the light most favorable to plaintiff, these
6 allegations support the reasonable inference that Dr. Lovett may have knowingly denied plaintiff
7 treatment for his serious medical needs.

8 Therefore, this court recommends that defendants' motion to dismiss defendant
9 Lovett from this action be denied.

10     3.  PA Akintola

11 Plaintiff alleges that PA Akintola was deliberately indifferent to plaintiff's serious
12 medical needs when:  (1) on October 1, 2007 (two weeks after plaintiff's surgery), Akintola
13 allegedly failed to treat the foul odor and puss emanating from plaintiff's finger, but instead
14 wrote "a complete page" of "illegible" "progress notes;" and (2) on October 11, 2007, Akintola
15 allegedly informed plaintiff "that he could not give an adequate diagnosis because [plaintiff's]
16 MCSP medical chart was missing;" however, Akintola nonetheless prescribed antibiotics and
17 motrin.  (Dkt. No. 11 at 4-5.)  Plaintiff contends that these alleged actions/failure adequately to
18 treat plaintiff's post-surgical complications, and "aggravated" his condition.

19 Defendants assert that these alleged facts may demonstrate, "at most," "either a
20 difference of medical opinion or negligence."  (Motion (Dkt. No. 18 at 14); Reply (Dkt. No. 20 at
21 5).  Plaintiff asserts that the alleged facts are analogous to those in Greeno v. Daley, 414 F.3d 645
22 (7th Cir. 2005), wherein the appellate court overturned the district court's grant of summary
23 judgment to defendants who, inter alia, withheld an indicated medication while prescribing a
24 different medication that was contraindicated for plaintiff; ignored plaintiff's requests for a
25 change in diet; delayed for two years referring plaintiff to a specialist; and threatened plaintiff
26 that he would be "locked up" if he continued to complain.

1          Plaintiff's allegations against PA Akintola are not so egregious as those alleged in
2  Greeno.  However, the current record supports, among competing inferences, a reasonable
3  inference that the prolonged infection of plaintiff's finger after his surgery may have caused
4  otherwise preventable complications, e.g., the dislocation of a surgical pin.  (See Director's Level
5  Response, noting plaintiff's complaint that his "hand became so infected that one of the pins
6  inserted during surgery fell out" (Dkt. No. 18-1 at 8-9).)  The record does not provide any basis
7  for PA Akintola's ten-day delay in prescribing antibiotics to treat what was allegedly an obvious
8  infection; nor does the record contradict plaintiff's claim that motrin was ineffective in
9  controlling his pain.  Further development of the record is warranted on plaintiff's claims
10 deliberate indifference claims against defendant Akintola.
11         Therefore, this court recommends that defendants' motion to dismiss defendant
12 Akintola from this action be denied.

## IV.  Conclusion

14         For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendants'
15 motion to dismiss (Dkt. No. 18), be denied.
16         These findings and recommendations are submitted to the United States District
17 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 21 days
18 after being served with these findings and recommendations, any party may file written
19 objections with the court and serve a copy on all parties.  Such a document should be captioned
20 "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the
21 objections shall be filed and served within 14 days after service of the objections.  The parties are
22 advised that failure to file objections within the specified time may waive the right to appeal the
23 District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 17, 2012

_Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

garc2693.mtd